MARY ANN THOMPSON

*v.*

LETHA J. OWEN *et al.*

*Opinion filed June 18, 1898—Rehearing denied October 6, 1898.*

1. WILLS—*probate of will does not depend on recollection of subscribing witnesses.* An attestation clause in due form, and bearing the signatures of witnesses which they admit to be genuine, is competent evidence in equity tending to establish the execution of the will, where the only defect in proof is the failure of the witnesses to recollect that all the formalities prescribed by the statute and recited in the attestation clause had been complied with. (*Dickie* v. *Carter*, 42 Ill. 376, and *Crowley* v. *Crowley*, 80 id. 469, explained.)

2. SAME—*on appeal to circuit court proponent is not confined to evidence of subscribing witnesses.* Under section 13 of the act on wills, on appeal to the circuit court from an order of the county court refusing to admit a will to probate, the proponent may introduce any evidence competent to establish a will in chancery, but is not relieved from the duty of producing the subscribing witnesses, if alive and sane and within the jurisdiction of the court.

3. WITNESSES—*party does not vouch for truthfulness of witness required by law.* One required by law to produce certain witnesses does not vouch for their truthfulness and integrity, and he may introduce proof of previous statements at variance with their testimony on material points, for the purpose of contradicting it.

4. SAME—*proponent may contradict testimony of subscribing witnesses.* A proponent is obliged by law to call the subscribing witnesses when within the jurisdiction of the court and competent to testify; and where they testify that they do not recollect that the formalities prescribed by statute and recited in the attestation clause, the signatures to which they admit are genuine, had been complied with, he may introduce affidavits made by them in a former proceeding, which had subsequently been dismissed, for the purpose of contradicting such testimony.

APPEAL from the Circuit Court of Hancock county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

JOHN B. RISSE & SON, for appellant:

A will may be established by one, only, of the attesting witnesses, if that witness can testify to a compliance with the statute relating to its execution. *In re Page*, 118 Ill. 576; *Canatsey* v. *Canatsey*, 130 id. 397.

Where witnesses fail to recollect what took place at the time of the execution of the will, these facts may be presumed from the attestation clause, if it shows a compliance with the statute; and where it does not appear affirmatively that the will was properly executed, courts will not set it aside simply because the attesting witnesses do not remember that all the requirements of the statute were complied with. *Cheney* v. *Arnold*, 18 Barb. 434; *Chaffee* v. *Baptist Miss. Convention*, 10 Paige, 89; *Barnes* v. *Barnes*, 66 Me. 286; *Jauncy* v. *Thorne*, 2 Barb. Ch. 40.

A perfect attestation clause, showing that all of the statutory formalities have been complied with, is presumptive evidence of the valid execution of a will, and in absence of proof to the contrary is conclusive. The presumption *omnia rite acta* arises as in ordinary cases, and the *testatum* is presumed to be evidence of what it states. *Barnes* v. *Barnes*, 66 Me. 286; 1 Redfield on Wills, (3d ed.) 237, 238; *Lawrence* v. *Norton*, 45 Barb. 488; *Nelson* v. *McGiffert*, 3 Barb. Ch. 158; *Jauncy* v. *Thorne*, 2 id. 40; *Ela* v. *Edwards*, 16 Gray, 91; *Trustees* v. *Calhoun*, 25 N. Y. 422; *Peck* v. *Carey*, 27 N. Y. Ch. 10; *Eliot* v. *Eliot*, 10 Allen, 357; *In re Johnson's will*, 27 N. Y. 649.

The probate of a will does not depend upon the recollection or veracity of a subscribing witness. 1 Redfield on Wills, 218; *Lawyer* v. *Smith*, 8 Mich. 411; *Cheney* v. *Arnold*, 18 Barb. 434; *Jauncy* v. *Thorne*, 2 Barb. Ch. 40; *Rogers* v. *Diamond*, 8 Eng. (Ark.) 474; *Hall* v. *Hall*, 18 Ga. 40.

O'HARRA, SCOFIELD & HARTZELL, for appellees:

Under section 2 of the Statute of Wills four things must concur to entitle the will to probate: First, the will must be in writing and signed by the testator, or in his presence by some one under his direction; second, it must be attested by two or more credible witnesses; third, two witnesses must prove that they saw the testator sign the will in their presence, or that he acknowledged the same to be his act and deed; and fourth, they must swear

that they believe the testator to be of sound mind and memory at the time of signing or acknowledging the same. *Dickie* v. *Carter*, 42 Ill. 376; *Canatsey* v. *Canatsey*, 130 id. 397; *Crowley* v. *Crowley*, 80 id. 469.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant filed in the county court of Hancock county an instrument in writing purporting to be the last will and testament of Thomas J. Thompson, deceased, and also filed her petition praying that the said instrument might be admitted to probate. A hearing was had and the county court refused to admit the instrument to probate as the will of the said deceased. The appellant appealed from this order of the county court to the circuit court of said county, and in the said circuit court the cause was, by agreement of the parties, submitted to the court without the intervention of a jury. The circuit court entered an order refusing and disallowing the petition of the appellant that said instrument be admitted to probate, and the appellant has brought the cause to this court by a further appeal from the said order and judgment of the circuit court.

The alleged will purported to bequeath and devise all the real and personal property of the said deceased, and upon its face appeared to have been duly executed with all the formalities provided for by statute, and appended thereto was an attestation clause containing full recitals to that effect. The attestation clause was as follows:

"The within instrument, consisting of two (2) sheets, or four (4) pages, was now here subscribed by Thomas J. Thompson, the testator, in the presence of each of us, and at the same time declared by him to be his last will and testament; and we, at his request and in his presence, and in the presence of each other, sign our names hereto as attesting witnesses this 6th day of January, 1893.                    ARCH E. McNEALL,
                                                S. M. IRWIN."

The attesting witnesses were produced, and each for himself testified that the signature appended to the at-

testation clause, purporting to be his signature, was his true and genuine signature, each of them, however, testifying he had no recollection of signing the said attestation clause or of seeing the deceased sign the will, or that the deceased ever acknowledged the same to be his act or deed.

It was proved by the testimony of two witnesses, and not denied or questioned, that the signature to the will was the true and genuine signature of the deceased, Thomas J. Thompson. The body of the will and the attestation clause were both in the handwriting of David E. Mack, judge of the county court of said Hancock county. It appeared from the testimony of Judge Mack that the deceased, who resided at Bowen, in said county of Hancock, about two years before his death came to the office of the witness in Carthage, in said county, and requested and directed him to prepare the will in accordance with his wishes, which he then fully made known to the witness. The witness testified he advised the deceased as to the requirements of the statute with relation to the execution of wills, and gave him full and explicit directions as to the mode and manner in which the instrument should be signed, executed and witnessed; that he afterwards, on the same day, wrote the instrument (including the attestation clause) offered as the will and sent it by mail to the said deceased, at Bowen. This witness identified the instrument offered as being the one so prepared and written by him. It was also proven that the deceased delivered the instrument purporting to be his last will and testament to one George Nash, a banker residing and doing business in Bowen, and requested him to preserve and safely keep the same, and that said Nash produced the instrument after the death of said Thompson.

The court rejected from consideration the recitals of the attestation clause as being incompetent. The will bore the genuine signature of the alleged testator; the attesting clause recited full compliance with all the require-

ments of the statute with relation to the execution of the will, and bore the genuine signatures of the attesting witnesses; no evidence appeared tending to disprove the observance of any requirement of the statute; circumstances were proven corroborative of due execution; the attesting witnesses were produced, identified their signatures to the attesting clause, gave no testimony tending to contradict anything recited in said clause; and in such state of circumstances we think the attesting clause was competent to be received in evidence and to be considered in connection with the testimony of the two attesting witnesses on the question of the execution of the will by the said deceased.  Such, of course, is not the rule when a will is presented to the county court for probate and the attesting witnesses are present in that court and under no disability, for the reason it is expressly provided, in order to authorize a county court to admit a will to probate, the execution of the will shall be proven by two or more credible witnesses, declaring, on oath or affirmation, they were present and saw the testator sign the said will in their presence, or that the testator acknowledged to them that the instrument purporting to be his last will was his act and deed. (Rev. Stat. sec. 2, chap. 148, entitled "Wills.")  But it is also expressly provided by section 13 of the same chapter, that if the probate of any will shall have been refused by any county court and an appeal shall have been taken from such order of the county court to the circuit court, it shall be lawful for the party seeking probate of such will to support the same, on the hearing in the circuit court, by any evidence competent to establish a will in chancery.

There is abundant authority for the view we have expressed that an attestation clause which the attesting witnesses to a will swear bears their signatures is competent evidence tending to establish the due execution of the will in chancery, when the only defect in the proof of the execution is that the subscribing witnesses are un-

able to recollect that all the formalities prescribed by the statute and recited in the attesting clause were actually complied with. In 1 Jarman on Wills, (6th ed.) 123, 124, it is said that "failure of memory on the part of witnesses will not upset the will where the attestation clause is sufficient,"—citing many cases. Also, in 1 Redfield on Wills (4th ed. p. 128,) it is said: "It seems to be well settled that in the absence of all proof, the witnesses being deceased or not in a condition to give testimony, the presumption *omnia rite acta* will arise as in ordinary cases.   *   *   * And where the attestation clause contains all the particulars of a good execution it will always be *prima facie* evidence of due execution, and will often prevail over the testimony of the witnesses who give evidence tending to show that some of the requisites were omitted." The text is supported by many authorities cited, and it is further said in note 26, on page 238, that "the mere forgetfulness of the witnesses of the facts certified in the attestation clause is not regarded as any obstruction to granting probate of the will." To the same effect see Schouler on Wills, secs. 347, 348.

In *Abbott* v. *Abbott*, 41 Mich. 540, where one of the attesting witnesses failed to remember, and could not therefore testify, that all the formal requisites required by the statute to be observed had been complied with, the late Chief Justice Campbell said: "But we know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity, of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or fraud of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are more or less truthful than others. It presumes they had, when they signed,

full knowledge of what they were doing, and in case they are dead, their attestation, when proved, is *prima facie* evidence that all was done as it should be."

In New Jersey (*McCurdy* v. *Neall*, 42 N. J. Eq. 333,) it was said: "The attestation clause is perfect, and the execution to which the witnesses thus certify and attest is an exact compliance with the statute. Under such circumstances the court must have clear proof to warrant the conclusion that the will was not duly executed. (*Wright* v. *Rogers*, L. R. 1 P. & D. 678.) In *Allaire* v. *Allaire*, 8 Vr. 312, it is laid down that 'if the attestation clause is perfect, and shows on its face that all the forms required by the statute have been complied with, and the subscribing witnesses, when called, admit their signatures, but through defect of memory, or for any other reason, fail to testify to the due execution of the will, it may be established on the presumption arising from the form of the attesting clause, unless there be affirmative evidence given to disprove its statements.' In *Tappen* v. *Davidson*, 12 C. E. Green, 459, it was held that if, in such case, it be merely doubtful, from the evidence, whether the statutory requisites have been complied with, the presumption arising from the attestation clause is not overcome. In this case the evidence is by no means such as to disprove the statements in the attestation clause."

In New York (*Matter of will of Kellum*, 52 N. Y. 517,) it was said: "If the attestation clause is full and the signatures genuine and the circumstances corroborative of due execution, and no evidence disproving a compliance in any particular, the presumption may be lawfully indulged that all the provisions of the statute are complied with, although the witnesses are unable to recollect the execution or what took place at the time. In proportion to the absence of memory should care and vigilance be exercised in examining the facts to prevent fraud and imposition; but if the circumstances of good faith and intelligence of the witnesses satisfy the judgment that

the statute has been complied with, there is no rule of law to prevent admitting the will to probate,—and this accords with the authorities in this State. *Lewis* v. *Lewis,* 11 N. Y. 220; 24 id. 51; 27 id. 9; 25 id. 422; 10 Paige, 85."

In *Jauncey* v. *Thorne,* 2 Barb. Ch. 40, Chancellor Walworth said: "It is a very different question, however, whether, to sustain and establish the validity of a will, the courts should hold it necessary for the subscribing witnesses to recollect and testify to the fact that all the formalities prescribed in the statute were actually complied with, for if this were required very few devises of property would be supported unless the testimony of the witnesses was taken and perpetuated soon after wills attested by them were made. This, in many cases, would be wholly impracticable, as the testator frequently lives many years after he has executed his will; and where there is good reason to suppose that the will has been duly executed and that no fraud or want of testamentary capacity existed at the time it was made, justice to the dead as well as to the living requires that the declared wishes of the testator should not be defeated by the imperfect recollections of attesting witnesses, or by reason of their deaths or removal beyond the jurisdiction of the State. It is for this reason that the most liberal presumptions in favor of the due execution of wills are sanctioned by the courts of justice, when, from lapse of time or otherwise, it may be impossible to give positive evidence on the subject." (See, also, *Peck* v. *Cary,* 27 N. Y. 9, and *Matter of Cottrell's will,* 95 id. 330.) In the *Peck case* Chief Justice Denio said: "A different rule, and one which would require the witnesses always to remember and be able to state affirmatively the several matters required to be done, would render wills the most uncertain of all legal instruments."

In Wisconsin, see *Will of Meurer,* 44 Wis. 392, *Will of Lewis,* 51 id. 101, and *Will of O'Hagan,* 73 id. 78. In the latter case, as in the case at bar, both of the attesting witnesses

testified that they had no recollection whatever of signing the instrument and could testify only to the genuineness of their signatures, and the Supreme Court said that "the presumption arising from the attestation and the attestation clause to the effect that it was subscribed by the witnesses in the presence of the testator, is not overcome by proof, hence the instrument was properly probated as the last will and testament of Peter O'Hagan." See, also, to the same effect, note to *Welch* v. *Welch*, 15 Am. Dec. 126; *Ela* v. *Edwards*, 16 Gray, 91; *Pates* v. *Joe*, 3 J. J. Marsh. 116; *Clarke* v. *Dunnavant*, 10 Leigh, 13; *Griffith* v. *Griffith*, 5 B. Mon. 511; *Lamberts* v. *Cooper*, 29 Gratt. 61; 29 Am. & Eng. Ency. of Law, 199, *et seq.* The rule seems to have been the same in England both before and after the passage of the act 1 Vict. chap. 26, in 1838. 1 Jarman on Wills, chap. 6.

It is, however, insisted this view cannot be harmonized with the declaration of this court in *Dickie* v. *Carter*, 42 Ill. 376, *Crowley* v. *Crowley*, 80 id. 469, and *Canatsey* v. *Canatsey*, 130 id. 397. The first of these cases enumerated four things which it was declared must concur to entitle a will to probate, one of such things being stated as follows: "Two witnesses must prove that they saw the testator or testatrix sign the will in their presence, or that he or she acknowledged the same to be his or her act and deed." The later cases cited adopt the language of the former case as expressive of the true rule. It is contended the true interpretation of this language so employed by the court in *Dickie* v. *Carter, supra,* and quoted with approval in the later cases, is, that it must be "proved" by at least two subscribing witnesses to the will that they saw the testator or testatrix sign said will, or that it must be "proved" by said two subscribing witnesses that the said testator or testatrix acknowledged the will to be his or her act and deed. It is manifest such was not the interpretation which this court intended should be given to the language in ques-

tion in *Dickie* v. *Carter, supra*, (the case in which the language was first employed,) for the reason that in that case the will was held to have been legally and duly proven though one of the two subscribing witnesses thereto did not see the testatrix sign the will and could not swear the testatrix acknowledged to him that the will was her act and deed. In that case the attestation clause bore the names of two subscribing witnesses, viz., George S. Pidgeon and one Fitzgerald. The witness Pidgeon testified that he drew the will and that the testatrix signed it in his presence. Fitzgerald, the other subscribing witness, testified that he did not know the testatrix and did not see her sign the will; that he was in an office in Cairo and the other attesting witness asked him to witness a paper; that he saw a lady in the office and asked her, "Is this your signature?" and she answered "Yes," whereupon he signed as a witness; that there were two women in the office, both unknown to him; that he did not know the woman he addressed, never saw her before or since, and did not know he was witnessing a will. This witness did not and could not "prove" that Mrs. Elizabeth Burnett, the testatrix, signed the will or acknowledged it to be her act and deed, but other witnesses were produced and their testimony "proved" that the woman who acknowledged to Fitzgerald that the signature to the will was her act and deed was the testatrix, and such proof was deemed competent and sufficient, in connection with the testimony of the subscribing witness, to sustain the will. It is manifest this court did not then understand that it could only be proved by the testimony of the subscribing witnesses that the testatrix acknowledged to the subscribing witnesses that the instrument purporting to be her will was her act and deed.

Nor do we think the interpretation claimed must be given to the language in question in order to harmonize the view adopted in this case with the principle which

was accepted in *Crowley* v. *Crowley, supra.* In that case we said (p. 470): "It cannot be claimed that the testimony of the subscribing witnesses to the will was sufficient to admit the instrument to probate. Neither of the witnesses had written his signature to the document, but each had signed by a cross, and they could not identify the instrument of writing as the one they had attested, nor could the witnesses testify that Daniel Crowley was, at the time the instrument of writing was executed, of sound mind and memory. * * * The evidence of the attesting witnesses failed entirely to establish two very important facts: First, the execution of the will, as they could not identify it as the one they signed as witnesses; second, they could not swear they believed the testator to be of sound mind and memory when the instrument was executed. So far, then, as appellant relied upon the evidence of the attesting witnesses to establish a state of facts under which the circuit court could admit the instrument of writing to probate, he failed entirely. It is, however, urged, that as probate of the will was refused in the county court, on the trial of the appeal in the circuit court appellant was entitled, under section 13, chapter 148, of 'Wills,' to prove the will by any evidence competent to establish a will in chancery. The statute authorizes such proof on the trial of an appeal in the circuit court in a case where probate of the will was denied in the county court, and it was expressly held in *Andrews* v. *Black*, 43 Ill. 256, in such a case, for the purpose of establishing the sanity of the testator, resort might be had to the same character of evidence as upon a hearing of a bill in chancery, filed under the statute, to set aside a will. Appellant was not, therefore, bound to rely upon the testimony of the two attesting witnesses to establish the execution of the will or the sanity of the testator, but could resort to any legitimate evidence to establish the fact." The opinion then proceeded to show that, aside from the testimony of the subscribing wit-

nesses, the only legitimate evidence produced which could be relied upon to establish the execution of the will was the testimony of the scrivener who drew the will, who testified that the alleged maker of the will executed it in the presence of the two attesting witnesses. It was insisted that the evidence of the scrivener was sufficient to establish the execution of the will, but we held that the requirement of the statute that the evidence of two witnesses should be required to establish that a testator executed a will could not be satisfied by the uncorroborated testimony of the scrivener. In that case proof of a valid and sufficient clause of attestation was wholly lacking. The attesting witnesses were unable to identify the will or the attesting clause, and the extent of the ruling was that the testimony of the scrivener alone was not sufficient to supply the proof demanded by the statute to establish the execution of the will. In the case at bar the attesting witnesses established that the attesting clause bore their genuine signatures. The signature of the deceased was also fully established. The defect in the proof was that the attesting witnesses were unable to recollect the facts connected with the action of the deceased and their action at the time they signed the attesting clause. In such state of case we think the attesting clause competent to be received in evidence, and to be given such weight as it may be found properly to have in connection with the testimony of the attesting witnesses.

In *Canatsey* v. *Canatsey, supra,* the expression of the court in *Dickie* v. *Carter, supra,* is quoted, but neither the conclusion reached nor any observation of the court in the course of the opinion is antagonistic to the position assumed in the case at bar.

It appears a prior application had been made to the county court of Hancock county by the appellant to have the will under consideration admitted to probate, and that the attesting witnesses then signed and made oath

to certain affidavits relative to the execution of the will. The county court then admitted the will to probate, but an appeal was prosecuted to the circuit court and the appellant dismissed the proceeding before it was reached for hearing in the latter court. Whether the certificates of the oaths of said witnesses were competent to be received in evidence in the present proceeding is a question discussed in the briefs, and which we ought to determine in view of the fact the cause must be again tried. The circuit court deemed the certificates or affidavits of such witnesses competent to be received in evidence.

The seventh section of chapter 148 of the Revised Statutes, entitled "Wills," provides "the certificates of the oaths of the witnesses at the time of the first probate shall be admitted in evidence" on the hearing of a bill in chancery to contest a will. There was, however, no first probate. The appeal and the dismissal of the application by the appellant blotted out the order of the county court admitting the instrument to probate, therefore the statute cited cannot operate to render the certificates admissible. The certificates tended, however, to contradict, in some degree, the testimony given by the subscribers thereto on the hearing. We think the certificates were, for this reason, competent to be received in evidence, together with the testimony of the subscribers thereto, as to the facts and circumstances which attended the signing of the same. It is true the appellant introduced the witnesses before the court for the purpose of having them testify in her behalf; but the well known general rule that a party who produces witnesses vouches for their integrity and credibility, and cannot be allowed to impeach and discredit them, has not full application where the law requires the party shall produce such witnesses in the cause. Under section 2 of our Statute of Wills a party who desires a will to be admitted to probate must of necessity produce the subscribing witnesses, if living and within the jurisdiction of the court and sane,

as witnesses in the probate court, and such party, on appeal from an order refusing to so admit the alleged will, is not relieved by the provisions of the thirteenth section of the same statute from the duty of laying before the circuit court the testimony of the subscribing witnesses, though such last mentioned section authorizes such party to produce other testimony in addition to that of the subscribing witnesses. As to a witness whom a party is required by law to introduce, the rule is that the truthfulness and integrity of the witness is not vouched for, and that the party so producing the witness may bring forward proof of previous declarations at variance on material points with his testimony, for the purpose of impeaching him or contradicting his testimony on such points. 29 Am. & Eng. Ency. of Law, p. 816, and cases cited in note 1.

Because of the error of the chancellor hereinbefore indicated, the order and decree of the circuit court must be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*